**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DARRICK WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15 cv 5198 |
| | ) | |
| VILLAGE OF CALUMET PARK, DETECTIVE | ) | Judge Rebecca R. Pallmeyer |
| JOHN SHEFCIK, In his Individual Capacity, | ) | |
| DETECTIVE KURTISA CURTIS, In his | ) | Magistrate Sidney I. Schenkier |
| Individual Capacity, DETECTIVE PHILIP | ) | |
| JOHNSON, In his Individual Capacity, | ) | |
| DETECTIVE DARREN MINES, In his | ) | Jury Trial Demanded |
| Individual Capacity, DETECTIVE KEITH | ) | |
| WILLOUGHBY, In his Individual Capacity, | ) | |
| DETECTIVE MARIO SMITH, In his Capacity | ) | |
| and the UNKNOWN POLICE OFFICER with | ) | |
| Badge Star No. 519, In his Individual | ) | |
| Capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

NOW COMES the Plaintiff, DARRICK WILLIAMS, by and through his attorneys, OTUBUSIN & ASSOCIATES, P.C., and complaining of Defendants, VILLAGE OF CALUMET PARK, DETECTIVE JOHN SHEFCIK, In his Individual Capacity, DETECTIVE KURTISA CURTIS, In his Individual Capacity, DETECTIVE PHILIP JOHNSON, In his Individual Capacity, DETECTIVE DARREN MINES, In his Individual Capacity, DETECTIVE KEITH WILLOUGHBY, In his Official Individual Capacity, DETECTIVE MARIO SMITH, In his Individual Capacity, and the UNKNOWN POLICE OFFICER with Badge Star No. 519, in his Individual Capacity, states as follows:

## CAUSE OF ACTION

1.      This is an action for money damages brought pursuant to 42 U.S.C. §1983, the U.S.

Constitution, the Laws of the State of Illinois and the Illinois Constitution, et seq. to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

2. Specifically, as a result of the egregious misconduct by law enforcement, Plaintiff Darrick Williams, was wrongfully arrested for heinous crimes he did not commit

3. Plaintiff was charged in a forty-three (43) count indictment including charges of aggravated criminal sexual assault, aggravated kidnaping; armed robbery; aggravated battery, and possession of a controlled substance.

4. As a further result of the egregious misconduct by law enforcement, Plaintiff Darrick Williams was permanently and severely injured.

5. After undergoing three separate trials, Plaintiff was found not guilty on all charges on the third and last trial on January 16, 2019.[1]

## JURISDICTION AND VENUE

6. Jurisdiction for Plaintiff's federal claims is based on 28 U.S.C. §§1331 and 1343(a). Jurisdiction for Plaintiff's state claims is based on supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

---

[1]The first trial was from July 20, 2015 to July 24, 2015. Plaintiff represented himself. On July 24, 2015, the jury found Plaintiff not guilty of aggravated battery with a deadly weapon and aggravated robbery with a deadly weapon. The jury was hung on the charges of three counts of aggravate criminal sexual assault with a deadly weapon, one count of possession of a controlled substance, and one count of aggravated kidnaping with a deadly weapon. A mistrial was declared.

The second trial was from May 25, 2016 to June 8, 2016. On June 8, 2016, the jury found the Plaintiff guilty of aggravated kidnaping with a deadly weapon and three counts of aggravated criminal sexual assault. Thereafter, Plaintiff was granted a new trial.

The third trial was from January 9, 2019 to January 16, 2019. On January 16, 2019, he was acquitted of all charges.

7.  Venue is proper pursuant to 28 U.S.C. §1391 (b). All parties reside in the judicial district, and the events giving rise to the claims asserted herein occurred within the district.

8.  Plaintiff, Darrick Williams (hereinafter referred to as "Plaintiff"), was at all relevant times a citizen of the United States and a resident of Cook County, Illinois.

9.  Defendants, John Shefcik, Kurtisa Curtis, Philip Johnson, Darren Mines, Keith Willoughby, Mario Smith and the unknown Police Officer (hereinafter referred to as "Defendant Shefcik," "Defendant Curtis," "Defendant Johnson," "Defendant Mines," "Defendant Willoughby," and "Defendant Smith," respectively or collectively as "Defendant Detectives or Officers"), are detectives and police officers employed by the Village of Calumet Park's Police Department.

10. At all times relevant to this Complaint, Defendants Shefcik, Curtis, Johnson, Mines, Willoughby, Smith and the unknown Police Officer were acting in the course and scope of their employment, and under color of state law, ordinance and/or regulation.

11. Defendants Shefcik, Curtis, Johnson, Mines, Willoughby, Smith and the unknown Police Officer are sued in their individual capacities.

12. Village of Calumet Park is a governmental municipal entity within the State of Illinois which consists in part of the Village of Calumet Park Police Department (hereinafter referred to as "Police Department"). Village of Calumet Park and the Police Department are necessary parties to this lawsuit.

13. Defendant Village of Calumet Park is sued as the employer and indemnifier of Defendants Shefcik, Curtis, Johnson, Mines, Willoughby, Smith and the unknown

Police Officer.

## **FACTS**

14. On July 9, 2014, Plaintiff was arrested at his place of employment in the strip mall located at 12545 South Ashland Avenue in the Village of Calumet Park for the sexual assault, kidnaping and battery of Francesca Diaz.

15. Plaintiff was arrested without being read his Miranda rights.

16. On the same day, Village of Calumet Park's Police Officers began investigating the sexual assault, kidnaping and battery.

17. Defendant Shefcik was assigned to lead the investigation into the sexual assault, kidnaping and battery..

18. During the course of the investigation, Defendants Shefcik, Curtis, Johnson, Mines, Willoughby, Smith and the unknown Police Officer took steps to falsely implicate the Plaintiff in the July 9, 2014 sexual assault, kidnaping and battery.

19. Defendants Shefcik, Curtis, Johnson, Mines, Willoughby, Smith and the unknown Police Officer knowingly, intentionally, and falsely implicated Plaintiff as being responsible for the sexual assault, despite a lack of physical evidence or reliable evidence of any kind implicating him in the sexual assault, kidnaping and battery.

20. Defendants Shefcik, Curtis, Johnson, Mines, Willoughby, Smith and the unknown Police Officer knowingly, intentionally, and falsely implicated Plaintiff as being responsible for the sexual assault, kidnaping and battery, despite knowing Plaintiff had a credible alibi.

21. Defendants Shefcik, Curtis, Johnson, Mines, Willoughby, Smith and the unknown Police Officer purposely misrepresented the facts and ignored exculpatory evidence

that exonerated Plaintiff in order to falsely implicate him in the sexual assault, kidnaping and battery.

22. Defendants Shefcik, Curtis, Johnson, Mines, Willoughby, Smith and the unknown Police Officer knowingly, intentionally, and falsely implicated Plaintiff as being responsible for the sexual assault, kidnaping and battery, despite knowing the sexual assault, kidnaping and battery did not happen.

23. Defendants Shefcik, Curtis, Johnson, Mines, Willoughby, Smith and the unknown Police Officer prepared false and misleading police reports implicating Plaintiff in the sexual assault, kidnaping and battery, knowing that those reports would form the basis of criminal charges.

24. Defendants Shefcik, Curtis, Johnson, Mines, Willoughby, Smith and the unknown Police Officer had no credible evidence that Plaintiff committed any sexual assault, kidnaping and battery, other than false and manufactured statements in the police reports.

25. On July 9, 2014, as a result of the investigation of Defendants Shefcik, Curtis, Johnson, Mines, Willoughby, Smith and the unknown Police Officer, Plaintiff was arrested for the sexual assault, kidnaping and battery of Francesca Diaz.

26. Detectives Johnson, Mines, and Curtis arrested Plaintiff with excessive force by slamming his body, face and chest violently to his wooden desk while shattering his prescription eye glasses, thereby causing permanent scar on the bridge of his nose and underneath his right eye, and, also, causing a permanent disfigurement scar under his eyes for the rest of his life.

27. The excessive force exerted on the Plaintiff by these detectives caused the lead

wires from his Implant Electronic Device ['IED"] from the Defibrillator Lead in his heart to move around and to shift into another position in his heart, thereby causing the lead wires to poke his right and left ventricles inside his heart septum lower wall muscles, with resulting severe and continuing heart and chest pain.

28.  After being transported to the Village of Calumet Park Police Station, Plaintiff was handcuffed to a wooden bench, and, while being handcuffed, Detective Johnson took out his personal knife from his pocket, placed his left black boot on Plaintiff's right leg, cut off Plaintiff's white T-Shirt from his body, cut Plaintiff's body on the right side of the body underneath his chest, and cut Plaintiff's shoe strings off his gym shoes.

29.  Detective Johnson searched Plaintiff's body again, having previously searched Plaintiff in the Intake Interview Room next to the Sally port of the garage of the Calumet Park Police Department. This current search was negative.

30.  Plaintiff was then placed in a holding Cell Number 1 wearing only a tank top as compared to when Plaintiff was initially arrested when he wore two T-shirts over the top of one another.

31.  Plaintiff requested to consult with an attorney, to speak with family members or with his boss but this request by the officers named in this Complaint.

32.  Plaintiff was beaten severely by the Calumet Park Police Officers in an attempt to coerce a false confession from him.

33.  Detective Shefcik took Plaintiff out of his cell into an Interview Room with no camera video in order to interrogate him.

34.  Neither Detective Shefcik nor Detective Smith read Plaintiff his Miranda rights but

instead, they both tried to intimidate Plaintiff while interrogating him.

35. Detective Curtis stated to Detectives Shefcik and Johnson to get a confession from the Plaintiff by any means possible. Detectives Shefcik and Johnson tried to get a confession out of the Plaintiff by coercing the Plaintiff to say and admit things that never happened in Plaintiff's office.

36. Detective Curtis stated to Detectives Shefcik and John that they should not come out of that room until they both get a statement from the Plaintiff any way they could or whatever it took to make it stick in court.

37. Detective Curtis stated to the Plaintiff as follows: "I told you I would get you Mr. Williams for that sh?#? you did to me and my Police Officer Johnson for calling in on us and filing that complaint to I/A Department and other people.

38. Detective Curtis stated to the Plaintiff as follows: "I am the boss around here and they all do what I tell them to do."

39. Then, Detective Curtis left the room and closed the door.

40. Detective Smith got up to leave the room while stating "I will see you all later. This is a lot of BS".

41. Thereafter, per the Order of Sergeant Curtis, Detective Shefcik and Police Officer Johnson started to beat up the Plaintiff.

42. Plaintiff started screaming out loud and pled with Detective Smith, "Please man, don't leave me in this room with these police by myself. Please man, please man."

43. Detective Smith closed the door and said nothing more to the Plaintiff but only to himself that this is B.S.

44. As soon as Detective Smith left and closed the door, the beating started up again.

45. Only Detective Shefcik and Police Officer Johnson were in the cell room when the beating started again.

46. Detective Shefcik and Police Officer Johnson slammed Plaintiff down with his face across a big table in the room.

47. As Police Officer Johnson put his right knee in the middle of Plaintiff's back to his spinal column, with continuous great pressure, and twisted Plaintiff's arm behind his back, Detective Shefcik took Plaintiff's right hand and tried to make him put his initial ("D.W.") on a paper that Plaintiff could not read or see due to the fact that he did not have his prescription glasses on since they had been broken Plaintiff's glasses in his office when he was slammed on the top of his wooden desk.

48. Then, Detective Shefcik and Police Officer Johnson beat Plaintiff in his back and the back of his head.

49. They both turned Plaintiff around on the table and beat him up in his chest with a red/maroon criminal law book as hard as they could.

50. Plaintiff stated to Detective Shefcik and Police Officer Johnson that he has never in his life waived his right to a lawyer or made any confession or signed such a confession in his 55 years' life, why would he do it now, especially to the alleged charges and crime that they were trying to put on him.

51. Plaintiff said to them, "NO WAY" because he did not commit these crimes or the charges.

52. Further, Plaintiff said to them that "nor are there any sexual assault or kidnaping in my history or in my background. Are you all CRAZY? Never at my place of business or inside my office. There would never be any evidence of that kind of crime on me

NEVER."

53. Plaintiff advised the Officers that he wanted to talk with his attorney and, also, to go to the Emergency Room of a Hospital as soon as possible.

54. He said, "Please I am in very serious pain. My chest is hurting. I am in pain. Help me, please . . ."

55. Detective Shefcik put Plaintiff back in Cell number 1.

56. Plaintiff started beating on the cell wall for HELP and Medical Attention.

57. The second round of physical brutality and violence at the hands of Detective Shefcik and Police Officer Johnson caused Plaintiff to have injuries and severe pain in his chest and the back of his spinal column to his spinal nerve tissue around the coccyx.

58. Plaintiff was transported by the Calumet Park Fire Department Ambulance to Metro South Medical Center at 12935 South Gregory Street in the City of Blue Island, Illinois.

59. En route to the Emergency Room of Metro South Medical Center, the Emergency Medical Paramedic Technician gave Plaintiff two (2) Nitroglycerine pills for his heart and chest pain as a vasodilator medicine to stabilize his heart beats.

60. While on the way to Metro South Medical Center, Plaintiff asked Police Officer Asia Blackman as to why they were treating him in this manner and holding him for so long for a crime that he did not commit.

61. Police Officer Blackburne responded that they would let the Plaintiff go once they were done examining what happened. Maybe in seventy-two (72) hours.

62. About one hour later after the Plaintiff's emergency room treatment, he was brought

back to the Calumet Park Police Station and put back in Cell number 1.

63.     Shortly thereafter, Plaintiff again requested to speak with his attorney and other family members and his request was again denied by Detective Shefcik, Sergeant Curtis, Sergeant Mines, Police Officer Johnson and all the rest of the personnel on duty on the 3 p.m.-11 p.m. shift on July 9, 2014.

64.     As time went by into the night, Plaintiff had to beat on the cell wall to get some food to eat and get something to drink since the water faucet in Cell Number 1 was not working.

65.     On the next day, July 10, 2014, Detective Shefcik came into Plaintiff's cell and took away his gym shoes, leaving the Plaintiff with no shoes on his feet.

66.     Thereafter, Detective Shefcik, Police Officer Moores and Police Officer Mines again for the third time beat the Plaintiff in an attempt to get a false confession from him and tried to coerce the Plaintiff into saying and signing documents falsely.

67.     Plaintiff refused to sign the documents and, as result, they kept on beating the Plaintiff and calling him derogatory names, etc.

68.     Plaintiff begged the Officers not to kill him saying to them, "Please, don't kill me. Please in the name of God, please, please . . ."

69.     After this third beating and physical abuse, Plaintiff was not able to breath or get air or oxygen to his lungs.

70.     The Officers panicked and called for an ambulance.

71.     The paramedics came and gave oxygen to the Plaintiff from a green tank.

72.     Thereafter, Plaintiff had to be taken to the Emergency Room again.

73.     A police officer with Badge Star No. 519, an African American male, followed the

ambulance to the Emergency Room and Plaintiff was in his custody.

74. This officer threatened Plaintiff not to say anything about what just happened at the police station to either the ambulance paramedics or the medical staff in the Emergency Room.

75. This officer warned Plaintiff that should he say anything about being beaten at the police station, he, the police officer, would forget about being a Christian and a man of God and would beat the Plaintiff with his black retractable police baton that he was wearing in his black belt.

76. As soon as they arrived at Metro South Medical Center, Plaintiff asked the hospital staff, the Head of Nursing, the Head of Security and the treating physician at the Hospital for assistance to call the Illinois State Police.

77. Police Officer with Badge Star No. 519 advised them not to assist the Plaintiff.

78. Plaintiff advised the old lady who was his roommate at the Hospital to assist him in calling for help. She stated that her son who is a Cook County Sheriff would be visiting her very soon and she would ask him to assist the Plaintiff.

79. Police Officer with Badge Star No. 519 advised the old lady to mind her own business or he would arrest her for obstruction of justice. Immediately, the old lady stopped talking with the Plaintiff because she was fearful of Police Officer with Badge Star No. 519.

80. Plaintiff asked the Head Administrative Nurse, an African American, on the Emergency Room staff for help. She responded to the Plaintiff that she would not get involved in his matter.

81. Plaintiff then asked for assistance from the Hospital's social worker, Chaplain and

Head of the Security Department asking them as follows: "Please call the Illinois State Police and put me in their custody."

82. As soon as the Emergency Room physician came into the room, Plaintiff asked him to call for assistance. He would not also assist the Plaintiff.

83. Once the physician and support staff left the room, Police Officer with Badge Star No. 519 took out his black retractable baton, closed the curtain in the room and hit Plaintiff in his bare foot since Plaintiff had no shoes on his feet. The Officer turned off the TV in the room and instructed Plaintiff to be quiet.

84. Plaintiff felt helpless and in fear of his life and safety because he had no one else to turn to.

85. On the way back to the Calumet Park Police Department lock-up in the police squad vehicle, Police Officer with Badge Star No. 519 pulled over the vehicle on a side street by a park just before crossing the 12700 bridge in Blue Island into Calumet Park Police Officer with Badge Start No. 519 got out of the squad vehicle, open the rear door and hit Plaintiff several times across Plaintiff's legs with his baton.

86. Police Officer with Badge Star No. 519 then drove Plaintiff back to the Calumet Park Police Department and placed Plaintiff in Cell Number 1.

87. On July 11, 2014, Plaintiff requested again to call his attorney or family member. Detective Shefcik declined Plaintiff's request.

88. Plaintiff started beating on the wall and door of the cell all day and night for assistance of any trustworthy and sympathetic staff on duty to allow him to use the wall phone in the lock-up area or hallway.

89. Plaintiff pled with who would hear him as follows: "Please give me something to eat.

Please take me to Court or let me talk to the States Attorney by myself."

90. On July 12, 2014, Plaintiff beat on the cell wall, requested to make a telephone call, and asked for water and food.

91. Detective Shefcik came back to the Plaintiff's cell and said to the Plaintiff that "if the Assistant State's Attorney did not charge him, that he, Detective Shefcik would plant a bag of drugs on the Plaintiff and have Plaintiff charged for drug possession".

92. Plaintiff responded to Detective Shefcik that it would be wrong of him to do that. That he, the Plaintiff, had never used drug or sold heroin in his life.

93. Plaintiff further replied that he would take a toxic hair test and that there was no person in Hyde Park, Blue Island or Calumet Park that would testify that Plaintiff sold or used heroin.

94. While standing outside of Plaintiff's cell, Detective Shefcik called Plaintiff all kinds of racist names: "You black A*** Nigger" so many times; "Savage" and "Scum of the Earth" and a piece of sh**", etc.

95. Detective Shefcik asked the Plaintiff how a nigger like him could have a business and an office.

96. Plaintiff responded that he worked hard for that position of managing the Strip Mall, the Office, the Barber Shop and the Car Wash.

97. Detective Shefcik responded that "Black A?* Niggers were lazy criminals and very stupid monkeys and have trouble keeping a job and all of you live on White People $ money off welfare."

98. In reply, Plaintiff stated to Detective Shefcik that what he, Detective Shefcik was saying was not true about Black/African American people. Plaintiff asked him to look

at President Obama and Detective Shefcik's coworkers.

99. Detective Shefcik then said "I hate that Nigger Obama. He will get his #?#/?# to the head one day.

100. Plaintiff said "Stop, Stop. You are wrong for that about the President and, also, about your coworkers. Obama stopped and banned any torture interrogation techniques which you have carried out on me".

101. Plaintiff stated to Detective Shefcik, "you and the other Officer and Sergeant Curtis Star No. 43 need to stop the injustice, terror, and corrupt interrogation techniques and evidence tampering on me and other people that come into this station because the record of your misconduct speaks for itself."

102. Plaintiff further said, "I just want to make a phone call or go to Court. I am in fear of my life and safety. I am asking you to please don't kill me in this station in the name of God. I am now begging for my life. I am 55 years and my body can't take any more of your beatings and physical brutality." Detective Shefcik left the lock-up area for now.

103. Meanwhile, Plaintiff kept knocking on the wall and the doors of the cell asking to go to Court. He pleaded, "Take me to Court, let me make a phone call, and give me something to eat. Hot – no more of that cold McDonald's food I've had for 5 days. No more cold food or a shower or bath or no running water. Please let me talk to the States Attorney if or when they do come. It is over 120 hours".

104. Police Officers Mooris and Mines with Badge Star No. 22 brought in a Caucasian woman to the hallway in front of Cell Number 1 to impersonate an Assistant State's Attorney to obtain illegal and false confession from the Plaintiff.

105. Officer Mines with Badge Star No. 22 advised the Plaintiff that the woman was the Assistant States Attorney and that he, the Plaintiff, should tell her everything about what happened and the woman would help.

106. Plaintiff asked the woman to see her identification as an officer of the court. She produced no identification whatsoever.

107. Then, Officers Mooris and Mines immediately grabbed the woman and whisked her away from the hallway.

108. Police Officer Mines was not aware that Plaintiff knew the Caucasian woman whose name might have been Mary because Plaintiff knew her from previous contacts and she was the Office Clerk staff member in the front office at the police station.

109. Plaintiff had driven her dark colored SUV from the station on several occasions and removed her baby car seat from the inside the vehicle for his employee to wash, clean and vacuum at Plaintiff's place of business at the Car Wash.

110. Defendant Shefcik conspired with Defendants Curtis, Johnson, Mines, Willoughby, Smith and unknown Police Officer to charge Plaintiff with a crime that he never committed and that never took place at the strip mall.

111. Based on the intentionally false investigation, reports, and testimony by Defendants Shefcik, Curtis, Johnson, Mines, Willoughby and Smith, Plaintiff was subsequently indicted on a forty-three (43) count indictment including twenty-five (25) counts of aggravated criminal sexual assault; twelve (12) counts of aggravated kidnaping; one (1) count of armed robbery; four (4) counts of aggravated battery, and one (1) count of possession of a controlled substance. He was also charged with one (1) count of misdemeanor of resisting a Peace Officer; People of the State of Illinois v. Darrick

<u>Williams</u>, Case No: 14 CR 14000-01 in the Circuit Court of Cook County.

112. Throughout the duration of Plaintiff's prosecution, Defendants Shefcik, Curtis, Johnson, Mines, Willoughby, Smith and the unknown Police Officer took significant steps to continue the prosecution of Plaintiff, even though they knew there was no probable cause to do so, through drafting reports, communicating with the state's attorney's office, appearing in court and testifying in court proceedings, to further the false prosecution of the Plaintiff.

113. Defendants Shefcik, Curtis, Johnson, Mines, Willoughby, Smith and the unknown Police Officer implicated Plaintiff in the sexual assault, kidnaping and battery and acted to commence and continue his prosecution, despite knowing they did not have probable cause that Plaintiff was involved in this crime. In fact, they knew that Plaintiff did not commit any sexual assault, kidnaping and battery, but acted to prosecute him anyway in order to cover up for their own misconduct and mishandling of the investigation into the phantom sexual assault, kidnaping and battery.

114. During this time, Defendants Shefcik, Curtis, Johnson, Mines, Willoughby, Smith and the unknown Police Officer knew they did not have probable cause to prosecute Plaintiff; however, they took steps to commence and continue his prosecution and failed to take steps to bring the truth to light.

115. On January 16, 2019, Plaintiff was acquitted of all criminal charges.

116. As a result of the foregoing, Plaintiff spent a total of 4.5 years, (that is, one thousand, six hundred and forty-seven (1647) days or a total of thirty-nine thousand, five hundred and twenty-eight hours in jail.

117. Defendant Shefcik personally participated in the unlawful conduct and acted jointly and in concert with Defendants Curtis, Johnson, Mines, Willoughby, Smith and the unknown Police Officer, who participated or acquiesced in the unlawful conduct, or failed to intervene to stop the unlawful conduct.

118. As a direct and proximate result of the acts of the Defendants described above, Plaintiff suffered damages including physical pain and suffering, emotional distress, loss of freedom, and pecuniary damages.

**COUNT I**
**42 U.S.C. § 1983 - Fourth Amendment Claim for Unlawful Detention**

119. Plaintiff re-alleges the above paragraphs as if fully set forth herein.

120. Plaintiff was detained in custody in Cook County Jail during the time he was being prosecuted as a result of the actions of Defendants Shefcik, Curtis, Johnson, Mines, Willoughby, Smith and the unknown Police Officer.

121. There was no probable cause to arrest, detain and prosecute Plaintiff for the sexual assault, kidnaping and battery.

122. Defendants Shefcik, Curtis, Johnson, Mines, Willoughby, Smith, and the unknown Police Officer knowing that probable cause did not exist, acted individually, jointly, and/or in conspiracy, to cause Plaintiff to be arrested, detained and prosecuted for sexual assault, kidnaping and battery, and/or failed to intervene knowing that Plaintiff was being detained without probable cause for sexual assault, kidnaping and battery thereby violating Plaintiff's right to be free from unreasonable seizures guaranteed to him by the Fourth and Fourteenth Amendments of the United States Constitution.

WHEREFORE, Plaintiff requests that this Honorable Court:

A.     Enter judgment against Defendant-Officers;

B.     Award Plaintiff compensatory and punitive damages;

C.     Award attorneys' fees and costs, and

D.     Award any further relief that this Honorable Court deems just and equitable.

**COUNT II**
**42 U.S.C. §1983 – Civil Conspiracy**

123.   Plaintiff re-alleges the above paragraphs as if fully set forth herein.

124.   Defendants Shefcik, Curtis, Johnson, Mines, Willoughby, Smith and the unknown Police Officer acted in concert pursuant to an agreement to deprive Plaintiff of his constitutional right to be free from unreasonable seizure, prosecution, and detention without probable cause.

125.   Defendants Shefcik, Curtis, Johnson, Mines, Willoughby, Smith and the unknown Police Officers knowingly and intentionally schemed and worked together in a common plan to falsely arrest and charge Plaintiff, to write false reports, to testify falsely before the grand jury, and to commence and continue the prosecution of the Plaintiff.

126.   As described above, Plaintiff suffered harm and injury as a result of the Defendants' conspiracy to deprive him of his constitutional right to be free from unlawful detention.

WHEREFORE, Plaintiff requests that this Honorable Court:

A.     Enter judgment against Defendant-Officers;

B.     Award Plaintiff compensatory and punitive damages;

C.      Award attorneys' fees and costs, and

D.      Award any further relief that this Honorable Court deems just and equitable.

## COUNT III
### State Law Claim for Malicious Prosecution

127.    Plaintiff re-alleges the above paragraphs as if fully set forth herein.

128.    Defendant Shefcik, in conjunction with Defendants Curtis, Johnson, Mines, Willoughby, Smith and the unknown Police Officer, commenced and/or continued false criminal charges / prosecution against Plaintiff for the sexual assault, kidnaping and battery of Diaz.

129.    They did so with malice.

130.    There was no probable cause for such charges.

131.    The charges were terminated in a manner favorable to Plaintiff.

WHEREFORE, Plaintiff requests that this Honorable Court:

A.      Enter judgment against Defendant-Officers;

B.      Award Plaintiff compensatory and punitive damages;

C.      Award attorneys' fees and costs, and

D.      Award any further relief that this Honorable Court deems just and equitable.

## COUNT IV
### Claim for Indemnification pursuant to 745 ILCS 10/9-102

132.    The acts of the Defendant-Officers described above were committed in the scope of their employment.

133.    Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, the Village of Calumet Park is liable for any judgments in this case arising from the actions of

Defendants Curtis, Johnson, Mines, Willoughby, Smith and the unknown Police Officer.

WHEREFORE, Plaintiff asks that upon judgment for the Plaintiff, this Honorable Court order Defendant Village of Calumet Park to indemnify the Defendant-Officers for any judgment entered in this case arising from their actions.

## COUNT V
## State Law Claim for *Respondeat Superior*

134. The acts of Defendants Shefcik, Curtis, Johnson, Mines, Willoughby, Smith and the unknown Police Officer, as described above, were committed in the scope of their employment.

135. As principal and employer, the Village of Calumet Park is liable for its agents' actions under the doctrine of *respondeat superior.*

WHEREFORE, Plaintiff asks that upon judgment for the Plaintiff, this Honorable Court find Defendant Village of Calumet Park liable for the actions of Defendants Shefcik, Curtis, Johnson, Mines, Willoughby, Smith and yet to be identified Calumet Park's Police Officer for any judgment entered in this case arising from their actions.

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

**DARRICK WILLIAMS**

By: ____/s/___Paul O. Otubusin_____
                One of His Attorneys

Dated: April 9, 2019      Paul O. Otubusin, ARDC No. 6205261
                 **OTUBUSIN & ASSOCIATES, P.C.**
                 77 West Washington Street
                 Suite 1204
                 Chicago, Illinois  60602
                 E-mail: drotubusin@otubusinlaw.com
                 (312) 251-1480
                 (312) 251-1481 [Fax]
                 *ATTORNEYS FOR DARRICK WILLIAMS*

## CERTIFICATE OF SERVICE

     I, Paul O. Otubusin, an attorney, certify that I caused a true and correct copy of the foregoing ***Plaintiff's Second Amended Complaint,*** to be served upon the below-named parties, electronically, by filing same with the Northern District of Illinois CM/ECF online system on April 9, 2019.

Gail L. Reich, Esq.
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road
suite 475
Northbrook, IL 60062
*greich@okgc.com*

Bhairav Radia, Esq.
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road
suite 475
Northbrook, IL 60062
*bradia@okgc.com*

Michael D. Arnold, Esq.
Illinois Attorney General's Office
100 West Randolph Street
13th Floor
Chicago, IL 60601
*marnold@atg.state.il.us*

Scott Jay Frankel
Frankel & Cohen
53 W. Jackson Blvd
Suite 1615
Chicago, IL 60604
*scottjfrankel.law@gmail.com*

S. Mayumi Grigsby
Assistant State's Attorneys
Richard J. Daley Center
50 West Washington Street
Room 500
Chicago, Illinois 60602
*scheagbe.grigsby@cookcountyil.gov*

Robert R. Cohen
Law Office of Robert R. Cohen
53 W. Jackson Boulevard
Suite 1615
Chicago, IL 60604
*attorneyrobertrcohen@gmail.com*

Michael D. Arnold
Illinois Assistant Attorney General
100 W. Randolph Street
13th Floor
Chicago, Illinois 60601
*marnold@atg.state.il.us*

Respectfully submitted,

**DARRICK WILLIAMS**

By:_____/s/___Paul O. Otubusin_____
One of His Attorneys

Dated: April 9, 2019

Paul O. Otubusin, ARDC No. 6205261
**OTUBUSIN & ASSOCIATES, P.C.**
77 West Washington Street
Suite 1204
Chicago, Illinois 60602
E-mail: drotubusin@otubusinlaw.com
(312) 251-1480
(312) 251-1481 [Fax]